**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**

---

ROBERT J. TROISE,

                                    Plaintiff,                    5:18-cv-00734 (BKS/ATB)

v.

SUNY Cortland NY,

                                    Defendant.

---

**Appearances:**

*Plaintiff, pro se:*
Robert J. Troise
Witchita Falls, TX 76308

*For Defendant:*
Letitia James
Attorney General of the State of New York
Aimee Cowan
Assistant Attorney General, of Counsel
Syracuse Regional Office
300 S. State Street, Ste. 300
Syracuse, NY 13202

**Hon. Brenda K. Sannes, United States District Judge:**

**MEMORANDUM-DECISION AND ORDER**

## I.      INTRODUCTION

Plaintiff Robert Troise brings this action pro se under Title VII of the Civil Rights Act of

1964 ("Title VII"), *as amended*, 42 U.S.C. § 2000e *et seq*., against Defendant State University of

New York at Cortland ("SUNY Cortland") alleging that it discriminated against him based on

gender by refusing to hire him. (Dkt. No. 1). Defendant moves for summary judgment under

Rule 56 of the Federal Rules of Civil Procedure. (Dkt. No. 66). Plaintiff opposes. (Dkt. No. 71).

For the reasons set forth below, Defendant's motion for summary judgment is granted.

## II.    RECORD BEFORE THE COURT

Defendant filed its motion on July 20, 2020, and included the Northern District of New York's "Notification of the Consequences of Failing to Respond to a Summary Judgment Motion," (Dkt. No. 66-1), as required by Local Rule 56.2 and *Vital v. Interfaith Med. Ctr.*, 168 F.3d 615, 620-21 (2d Cir. 1999). It advises that a "response to the defendants' statement of material facts" must "admit[] and/or den[y] each of the defendants' assertions in matching numbered paragraphs," and "support[] each denial with citations to record evidence." (Dkt. No. 66-1) (quoting then applicable N.D.N.Y. L.R. 7.1(a)(1)).

Plaintiff failed to respond to Defendant's motion by the August 3, 2020 deadline set by the Court. (Dkt. No. 66). On August 9, 2020, Defendant filed a letter with the Court, noting that it had received Plaintiff's purported response to the motion by email on August 8, 2020. (Dkt. No. 68). Defendant asked the Court to reject Plaintiff's response as untimely, and accept Defendants' statement of material facts as admitted and its legal arguments as conceded. (*Id.*). On August 18, 2020, Plaintiff filed a one-page motion opposing Defendant's request and seeking to "put off any court dates" because of the Covid-19 pandemic. (Dkt. No. 69).[1]

On August 19, 2020, Plaintiff filed what appears to be an opposition to the motion for summary judgment, which included his August 8, 2020 e-mail to Defendant's counsel and which appears to respond to Defendant's statement of material facts in numbered paragraphs. (Dkt. No. 71).[2] Although it does contain some denials, the denials are not supported with citations to record

---

[1] Plaintiff alleged that he "was not given notice of [the] motion by [Defendant]." (Dkt. No. 69). Defendant has submitted a Certificate of Service for the motion, (Dkt. No. 70-1), as well as an e-mail reflecting Plaintiff's acknowledgement that he received the motion, (Dkt. No. 70-2). Attachments to Plaintiff's own papers demonstrate his receipt of the motion as well. (Dkt. No. 71, at 2-4) (E-mail dated August 8, 2020, from Plaintiff to Defendant responding to Defendant's statement of material facts attached to the motion for summary judgment).

[2] While the Court does not condone Plaintiff's untimely response, which was made without permission or a showing of good cause, in light of Plaintiff's pro se status and his belated request for an extension due to the Covid-19 pandemic, the Court will accept his submission. Defendant's letter motion asking the Court to reject Plaintiff's

evidence. It also contains numerous argumentative and conclusory statements. (*See, e.g.* Dkt. No. 71, at 3) (responding to five paragraphs regarding Plaintiff's reference results with the statement "not job related").

Under these circumstances, the Court may "deem admitted any properly supported facts set forth in the statement of material facts that the opposing party does not specifically controvert." N.D.N.Y. Local Rule 56.1(b). *See Elgamil v. Syracuse Univ.*, 99-cv-611, 2000 WL 1264122, at *1, 2000 U.S. Dist. LEXIS 12598, at *3 (N.D.N.Y. Aug. 21, 2000) (deeming facts admitted when plaintiff failed to admit or deny the specific assertions set forth by defendant, and failed to provide any citation to the record). However, in deference to Plaintiff's pro se status and out of an abundance of caution, the Court has nevertheless conducted "an assiduous review of the record" to determine whether there is evidence that might support Plaintiff's claims. *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001). Therefore, the facts have been drawn from the facts in Defendant's statement of material facts that are properly supported with citations to the record, (Dkt. No. 66-20), and the exhibits, depositions, and declarations attached to Defendant's motion for summary judgment, (Dkt. Nos. 66-2 through 66-18). The facts are taken in the light most favorable to Plaintiff. *Gilles v. Repicky*, 511 F.3d 239, 243 (2d Cir. 2007).

## III.   FACTS

### A.   Plaintiff's Application with SUNY Cortland

On June 6, 2016, SUNY Cortland posted an Office Assistant 1 position for the Student Conduct Office. (Dkt. No. 66-20, ¶ 2; Dkt. No. 66-9, ¶ 4; Dkt. No. 66-10). Qualifications for the position included: (1) holding the title of Office Assistant 1 or (2) being reachable on the full-time New York State Civil Service list and responding to a canvas letter that was sent to

---

responses as untimely and "deem Plaintiff to have consented to the legal arguments contained in Defendants' memorandum of law," (Dkt. No. 68), is denied.

individuals on the eligible list. (Dkt. No. 66-20, ¶ 3; Dkt. No. 66-9, ¶ 5; Dkt. No. 66-10). The

position also required passing the Civil Service typing test. (Dkt. No. 66-20, ¶ 4; Dkt. No. 66-9, ¶

5; Dkt. No. 66-10).

On June 7, 2016, a canvas letter was sent to all individuals "appearing on the Civil

Service Eligible list of the Office Assistant 1 title." (Dkt. No. 66-20, ¶ 11; Dkt. No. 66-9, ¶ 8;

Dkt. No. 66-12). Three individuals, Plaintiff, Betty, and Mohammed,[3] responded to the canvas

letter indicating their interest in the position. (Dkt. No. 66-20, ¶¶ 12, 14, 15; Dkt. No. 66-9, ¶¶ 8-

9; Dkt. No. 66-12). On June 22, 2016, the deadline for applications, "a list of reachable Civil

Service candidates and lateral transfers was compiled and provided to Michael Pitaro, the SUNY

Cortland Associate Director of Student Conduct." (Dkt. No. 66-20, ¶ 6; Dkt. No. 66-9, ¶ 6; Dkt.

No. 66-11). Plaintiff was one of three individuals on the list provided to Pitaro, and a fourth

individual applied "as an off-campus lateral transfer." (Dkt. No. 66-20, ¶ 7; Dkt. No. 66-9, ¶ 7;

Dkt. No. 66-11). Of the eligible candidates, only Plaintiff and Betty were contacted for phone

interviews. (Dkt. No. 66-20, ¶ 15; Dkt. No. 66-9, ¶ 9). After her phone interview, Pitaro "decided

that candidate Betty was no longer qualified for the position." (Dkt. No. 66-20, ¶ 16; Dkt. No.

66-9, ¶ 10).

Plaintiff had a phone interview with Pitaro and Rebecca,[4] the Director of Student

Conduct. (Dkt. No. 66-20, ¶¶ 17, 20; Dkt. No. 66-9, ¶ 10). Plaintiff had never worked in an

Office Assistant 1 position before, but had previously worked at SUNY Stony Brook as a

switchboard operator and had prior experience doing the "type of work" required as an office

assistant from his employment at the Internal Revenue Service and at a bank. (Dkt. No. 66-6, at

---

[3] The last names of the other applicants were redacted and excluded from the exhibits to protect their privacy. (Dkt. No. 66-9, at n.1).

[4] The record does not indicate Rebecca's last name.

47). Plaintiff had experience with Microsoft Word and Microsoft Excel and had "very good keyboarding skills," but did not have any keyboarding certificates, and had never taken keyboarding lessons or classes. (*Id*.). Plaintiff also had experience working with the "Cortland police." (Dkt. No. 66-6, at 41). After the interview, Pitaro was interested in pursuing Plaintiff as a candidate. (Dkt. No. 66-20, ¶¶ 17, 20; Dkt. No. 66-9, ¶ 10). At no point during the phone interview did Pitaro or Rebecca indicate that SUNY Cortland sought to fill the position with a female candidate, or say anything discriminatory towards men. (Dkt. No. 66-20, at ¶¶ 18-19; Dkt. No. 66-6, at 50).

Plaintiff was asked to provide references, (Dkt. No. 66-6, at 51), and SUNY Cortland used a third-party vendor called Skill Survey to investigate the references, (Dkt. No. 66-20, ¶ 20; Dkt. No. 66-9, ¶ 10). Skill Survey "uses a competency-based questionnaire to assess a candidates' probability for success in a given position." (Dkt. No. 66-20, ¶ 21; Dkt. No. 66-9, ¶ 10). SUNY Cortland was part of a 90-day pilot program with Skill Survey from May 12, 2016 to August 11, 2016. (Dkt. No. 66-20, ¶ 22; Dkt. No. 66-9, ¶ 11). The position Plaintiff applied for was considered to be a "Competitive and Non-Competitive Classified/Entry Level Professional" under the pilot program, and required three professional references and at least one reference from someone who acted in a "supervisory manner." (Dkt. No. 66-20, ¶ 23-24; Dkt. No. 66-3, at 8; Dkt. No. 66-9, ¶ 10; Dkt. No. 66-14). Plaintiff did not provide any references from former co-workers, managers, or supervisors. (Dkt. No. 66-6, at 56). Skill Survey reached out to eight different references, of which four responded. (Dkt. No. 66-20, ¶ 25; Dkt. No. 66-13, at 2). The four references Skill Survey was able to reach included library employees from a library Plaintiff was a patron of and a friend from Plaintiff's church. (Dkt. No. 66-6, at 59-64; Dkt. No. 66-13, at 8; Dkt. No. 66-20, at 37).

5

Skill Survey provides an "overall average numeric rating" based on the responses a candidate's references give to a survey. (Dkt. No. 66-13, at 2). Based on Plaintiff's results from the reference survey, Plaintiff scored lower than "eleven (11) other Office Assistant 1 applications who interviewed for various similar positions around that same time at SUNY Cortland." (Dkt. No. 66-9, ¶ 14; Dkt. No. 66-20, at ¶ 26). He was ranked in the 1st percentile in several categories out of approximately 57,000 administrative professionals, (Dkt. No. 66-20, ¶ 27; Dkt. No. 66-13, at 2; Dkt. No. 66-9, ¶ 14), and in the lowest 5th percentile for all surveys conducted for any position, (Dkt. No. 66-9, ¶ 19; Dkt. No. 66-20, ¶ 50). Plaintiff's overall "average numeric rating" on the "Competency Cluster," which "rated him [] on job-specific behaviors," was in the 1st percentile. (Dkt. No. 66-13, at 2). Plaintiff also scored in the 1st percentile for "Interpersonal Skills," "Problem Solving and Adaptability," and "Personal Value Commitment," and in the 2nd percentile for "Professionalism." (*Id*.). Plaintiff's 1st percentile ratings "were the lowest rating of any applicant using Skill Survey" during SUNY Cortland's trial period. (Dkt. No. 66-9, ¶ 18). SUNY Cortland "prefers results for the Skill Survey reference check to be at least a percentile above 10% because an applicant who scores below 10% is much more likely to be terminated within a year." (Dkt. No. 66-9, ¶ 20).

Half of the references who responded to the survey indicated they would not work with Plaintiff again in the future.[5] (Dkt. No. 66-20, ¶ 39; Dkt. No. 66-9, ¶ 17(b); Dkt. No. 66-13, at 8). One of Plaintiff's references included negative comments about Plaintiff's attitude and ability, including that he needed "to work on slowing down and checking for spelling and grammar mistakes as well as punctuation errors when using written communication." (Dkt. No. 66-13, at

---

[5] One reference noted that that he or she "had to answer no to hiring and working with Robert as he was never an employee at the place in which I knew Robert." (Dkt. No. 66-13, at 3).

3). The same reference also indicated that Plaintiff "has a tendency to be negative at times," "needs to work on looking for more positive things to say about situations rather than looking at them from the negative perceptive (sic)," and "needs to learn more ways to use the computer rather than just surfing the internet." (*Id.*). Plaintiff's references also answered questions concerning "diversity equity and inclusion," and the responses were "lower than SUNY Cortland's standard." (Dkt. No. 66-20, ¶ 43; Dkt. No. 66-9, ¶ 17(c)). For these questions, SUNY Cortland prefers answers indicating "Always" and "Great Extent," "or maybe an occasional 'Above Average Extent.'" (Dkt. No. 66-20, ¶ 44; Dkt. No. 66-9, ¶ 17(c)). The answers from Plaintiff's references were mostly in the "Above Average Extent" category, with some "Moderate Extent" responses as well. (Dkt. No. 66-13, at 3-4).

Upon review of Plaintiff's Skill Survey results, Gary Evans, Associate Vice President for Human Resources for SUNY Cortland, told Pitaro that "human resources did not support pursuing [Plaintiff] further for a position at the university." (Dkt. No. 66-9, ¶ 21). Pitaro did not hire Plaintiff for the Office Assistant 1 position; in a letter date July 21, 2016, Pitaro informed Plaintiff that he was "no longer being considered for the position." (Dkt. No. 66-15; Dkt. No. 66-9, ¶ 22). According to Evans, Plaintiff "was not hired simply because his references were abysmal." (Dkt. No. 66-9, ¶ 23). The position was not permanently filled, "and a temporary clerical support person, Anne, was placed into the position, pending the ability to access a new civil service list." (Dkt. No. 66-9, ¶ 24; Dkt. No. 66-20, ¶ 59). On June 27, 2016, a male employee was hired to fill an equivalent Office Assistant 1 position in another SUNY Cortland office. (Dkt. No. 66-9, ¶ 26). After the academic year of 2016-17, Defendant reinitiated a search for the Office Assistant 1 position that Plaintiff had applied for, and on June 5, 2017, a female candidate was hired to permanently fill the position. (Dkt. No. 66-9, ¶ 25).

### B.     Plaintiff's Discrimination Complaint

On August 8, 2016, Plaintiff filed a verified complaint with the New York State Division of Human Rights ("DHR") alleging that SUNY Cortland had discriminated against him because of his age, arrest record, and sex. (Dkt. No. 66-16, ¶ 3; Dkt. No. 66-4, at 1). In his amended complaint, signed on August 10, 2016, Plaintiff listed his address as 1111 S. Red River Expressway, Burkburnett, Texas. (Dkt. No. 66-17, at 8). On August 26, 2016, SUNY Cortland received a letter from DHR providing a copy of the amended complaint. (Dkt. No. 66-17). Michael Hallett, a human rights specialist for DHR, hosted a "two-party conference" on January 9, 2017 to discuss the amended complaint. (Dkt. No. 66-16, ¶¶ 1, 4). Plaintiff appeared telephonically along with SUNY Cortland attorney Joseph Storch, while Evans and Pitaro appeared in person as witnesses for SUNY Cortland. (*Id*.).

Plaintiff testified that during this DHR telephone conference, Evans told him that there was "a person in that job and that when the civil service list came out, they were going to hire [] her because they wanted a woman in that position." (Dkt. No. 66-6, at 66-67). Plaintiff testified that this comment was said in front of Hallett from DHR. (*Id*. at 66). Evans denied making the comment, and in a sworn declaration claimed that "[a]t no point did I or anyone else at the pre-hearing conference indicate that SUNY Cortland desired to fill the Office Assistant 1 position with a female." (Dkt. No. 66-9, ¶¶ 27-28). Hallett from DHR similarly submitted a sworn declaration stating that "[d]uring the January 9, 2017 conference, Mr. Evans never stated that he wanted a female employee in the Office Assistant position." (Dkt. No. 66-16, ¶ 5). Hallett's notes from the conference do not reflect any such statement. (Dkt. No. 66-18).

On February 1, 2017, DHR issued a determination and order after investigation, concluding that there was no probable cause "to believe that the respondent has engaged in or is engaging in the unlawful discriminatory practice complained of." (Dkt. No. 66-7). The Equal

Employment Opportunity Commission ("EEOC") adopted the DHR's findings on March 13, 2017 and issued a dismissal and notice of rights letter ("right to sue letter") stating that it was "closing its file on this charge." (Dkt. No. 66-5). The right to sue letter included a provision alerting Plaintiff that he "may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court" but that the lawsuit had to be filed within 90 days or his "right to sue based on this charge will be lost." (*Id.*). The letter was addressed to Plaintiff at 215 S. Walnut Street, Richland, Missouri. (*Id.*). Plaintiff filed a complaint against SUNY Cortland in the Northern District of Texas on November 14, 2017, 246 days after the date on the right to sue letter. (Dkt. No. 1; Dkt. No. 66-20, at ¶ 78).[6]

## IV.    STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(a), summary judgment may be granted only if all the submissions taken together "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The moving party bears the initial burden of demonstrating "the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. A fact is "material" if it "might affect the outcome of the suit under the governing law," and is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *see also Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005) (citing *Anderson*). The movant may meet this burden by showing that the nonmoving party has "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322; *see also Selevan*

---

[6] On June 22, 2018, the case was transferred to the Northern District of New York. (Dkt. No. 10).

*v. N.Y. Thruway Auth.*, 711 F.3d 253, 256 (2d Cir. 2013) (summary judgment appropriate where the nonmoving party fails to "'come forth with evidence sufficient to permit a reasonable juror to return a verdict in his or her favor on' an essential element of a claim" (quoting *In re Omnicom Grp., Inc. Sec. Litig.*, 597 F.3d 501, 509 (2d Cir. 2010))).

If the moving party meets this burden, the nonmoving party must "set out specific facts showing a genuine issue for trial." *Anderson*, 477 U.S. at 248, 250; *see also Celotex*, 477 U.S. at 323-24; *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009). "When ruling on a summary judgment motion, the district court must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Dallas Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 780 (2d Cir. 2003). Still, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and cannot rely on "mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment," *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986) (quoting *Quarles v. Gen. Motors Corp.*, 758 F.2d 839, 840 (2d Cir. 1985)). Furthermore, "[m]ere conclusory allegations or denials . . . cannot by themselves create a genuine issue of material fact where none would otherwise exist." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (quoting *Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1456 (2d Cir. 1995)).

## V.   DISCUSSION

### A.   Timeliness

In order to be timely, claims under Title VII must be filed within 90 days after receipt of the right to sue letter from the EEOC. *Singletary v. Sentry Group (SAFE)*, No. 10-cv-6627, 2011 WL 2149104, at *5, 2011 U.S. Dist. LEXIS 58193, at *12-13 (W.D.N.Y. May 31, 2011) (citing *Johnson v. St. Barnabas Nursing Home*, 368 F. App'x 246, 248 (2d Cir. 2010)). Courts in the

Second Circuit "presume[] that a mailed document is received three days after its mailing . . . and that the notice is presumed to have been mailed on the date shown on the notice." *Ko v. JP Morgan Chase Bank, N.A.*, 730 F. App'x 62, 63 (2d Cir. 2018) (citing *Sherlock v. Montefiore Med. Ctr.*, 84 F.3d 522, 525 (2d Cir. 1996)). However, "[i]f a claimant presents sworn testimony or other admissible evidence from which it could reasonably be inferred either that the notice was mailed later than its typewritten date or that it took longer than three days to reach her by mail, the initial presumption is not dispositive." *Sherlock*, 84 F.3d at 526.

Here, the right to sue letter is dated March 13, 2017, (Dkt. No. 66-5), which creates a presumption that it was mailed the same day. The letter bears a Richland, Missouri address, and therefore the letter is presumed to have arrived at that address on March 16, 2017. *Tiberio v. Allergy Asthma Immunology of Rochester*, 664 F.3d 35, 37 (2d Cir. 2011) ("[W]e presume that [the plaintiff] received the notice on November 27, 2010, three days after the notice was mailed."). A plaintiff has 90 days to bring an employment discrimination claim. Plaintiff initiated the present lawsuit by filing in the Northern District of Texas on November 14, 2017, 243 days after the presumed day of receipt. (Dkt. No. 1). Therefore, without "sworn testimony or other admissible evidence from which it could reasonably be inferred either that the notice was mailed later than its typewritten date or that it took longer than three days to reach [him] by mail," Plaintiff's Title VII would be time-barred. *Sherlock*, 84 F.3d at 526.

At his deposition, Plaintiff testified that he never received the March 13, 2017 right to sue letter. (Dkt. No. 66-6, at 27). The record does not reflect why the EEOC sent the right to sue letter to Plaintiff in Missouri. In Plaintiff's amended complaint, filed with DHR on August 10, 2016, Plaintiff listed an address in Burkburnett, Texas. (Dkt. No. 66-17, at 8). Plaintiff filed an amendment to that complaint with DHR on January 12, 2017, again providing a Texas address.

(Dkt. No. 66-8, at 3). Plaintiff's signature on both documents appears to have been notarized by a Texan notary public. (Dkt. No. 66-17, at 9; Dkt. No. 66-8, at 7). The verified complaint that DHR sent to the Defendant on August 23, 2016, has Plaintiff's Burkburnett, Texas address. (Dkt. No. 66-3, at 8; Dkt. No. 66-2, at 1). Both the DHR and EEOC sent correspondence to Plaintiff's Burkburnett, Texas address. From August 23, 2016 to December 21, 2016, DHR sent correspondence to Plaintiff at the Burkburnett, Texas address. (Dkt. No. 66-7, at 69-70, 76, 79). On August 23, 2016 the EEOC sent correspondence to Plaintiff at the Burkburnett, Texas address. (Dkt. No. 66-7, at 84). It appears, however, that DHR also had a Missouri address for Plaintiff: an unsigned and undated complaint lists a Missouri address, and DHR appears to have sent the January 2017 amendment to the complaint to Plaintiff in Missouri. (Dkt. No. 66-8, at 1, 9).[7] The EEOC ultimately sent the March 2017 right to sue letter to Plaintiff in Richland, Missouri. (Dkt. No. 66-5). Plaintiff filed this action in the Northern District of Texas in November 2017. (Dkt. No. 1). Defendant has offered no evidence or explanation indicating why the right to sue letter was sent to Plaintiff in Missouri.

Plaintiff testified that he was living in Burkburnett, Texas in 2016 when he filed the complaint and amended complaint with DHR, which is consistent with these complaints. (Dkt. No. 66-6, at 19-20; Dkt. No. 66-17, at 8). Plaintiff's testimony regarding his residence in Missouri is inconsistent and confused. Plaintiff first testified that he lived at the Richland, Missouri address "probably" from September 2010 to July of 2014. (Dkt. No. 66-6, at 21). Plaintiff testified that he moved to Texas, from Richland, Missouri, in July of 2014, which is consistent with the documentary evidence in the record. (Dkt. No. 66-6, at 21, 27).[8] However,

---

[7] The record does not reflect who prepared the unsigned and undated complaint.

[8] The canvas letter Plaintiff returned to SUNY Cortland in June 2016 was sent to the Burkburnett, Texas address, and Plaintiff's enclosed resume shows that he worked at the American Red Cross in Missouri until June 2014, before starting a new job at an American Red Cross in Texas in March 2016. (Dkt. No. 66-12, at 1-2). The letter Pitaro sent

Plaintiff later testified that he was living in Richland, Missouri in February 2017 when he received the letter from DHR dismissing his complaint, and that within ten days he let both DHR and the EEOC know about "the new address." (*Id*. at 25-26; Dkt. No. 66-4). Plaintiff did not have any records documenting any such correspondence. (Dkt. No. 66-6, at 28). When Plaintiff was asked how he got the February 2017 letter from DHR in Missouri if he had moved from Missouri in 2014, he said that he had "no idea" how he received the letter in February 2017. The record does not reflect where the DHR mailed its February 2017 letter to Plaintiff: Plaintiff's address is completely redacted in the affidavit of service. (Dkt. No. 66-7, at 5). If Plaintiff did move to Texas from Missouri in 2014, then he could not have provided his "new address" to DHR and the EEOC; the alleged discrimination did not occur until 2016.

Defendant argues that the presumption applies, citing to Plaintiff's testimony that he received the February 2017 DHR letter in Missouri and had no records reflecting the fact that he updated his address. (Dkt. No. 66-19, at 11-13). As Defendant notes, a person who files a claim with the EEOC is responsible for ensuring the agency possesses their current address. *See* 29 C.F.R. § 1601.7(b); *Felton v. New York Post*, No. 90-cv-2251, 1990 WL 113176, at *2, 1990 U.S. Dist. LEXIS 10013, at *5 (S.D.N.Y. Aug. 2, 1990) ("[I]t is well established that non-receipt of a right-to-sue letter because of a change of address about which the EEOC was not informed is not an event beyond a plaintiff's control." (citing *St. Louis v. Alverno Coll.*, 744 F.2d 1314, 1316-17 (7th Cir. 1984))).

Here, however, considering all of the evidence, and construing the facts in the light most favorable to the Plaintiff, the record evidence is sufficient to rebut the presumption that Plaintiff

---

to Plaintiff on July 21, 2016 indicating he was no longer being considered for the position was also addressed to Plaintiff's Burkburnett, Texas address. (Dkt. No. 66-15).

received the right to sue letter three days after the EEOC mailed it to the Missouri address. Plaintiff lived in Texas at the time of the discrimination in 2016; Plaintiff provided his address in Texas in his complaints to DHR; both the DHR and the EEOC sent correspondence to the Plaintiff in Texas; and there is no evidence indicating why the EEOC sent the right to sue letter to Missouri. Defendant seeks to rely on Plaintiff's confused deposition testimony; but in light of the record evidence, including Plaintiff's testimony that he never received the right to sue letter and the fact that Plaintiff provided a Texas address in his complaints to DHR,[9] there is an issue of fact as to whether Plaintiff received the right to sue letter that was sent to Missouri. *See Sherlock*, 84 F.3d at 526 ("If a claimant presents sworn testimony or other admissible evidence from which it could reasonably be inferred either that the notice was mailed later than its typewritten date or that it took longer than three days to reach her by mail, the initial presumption is not dispositive."); *Garner v. Honest Weight Food Co-op., Inc.*, 96 F. Supp. 2d 154, 159 (N.D.N.Y. 2000) (finding material issue of fact based upon the plaintiff's sworn affidavit regarding the date that she received the right to sue letter); *Wall v. Town Sports Int'l*, No. 05-cv-3045, 2006 WL 226008, at *2, 2006 U.S. Dist. LEXIS 3326, at *4-5 (S.D.N.Y. Jan. 31, 2006) (finding material issue of fact as to when the plaintiff received right to sue letter based upon sworn statement which was supported by documentary evidence). Defendant is therefore not entitled to summary judgment on grounds of timeliness.

---

[9] Defendant asserts that Plaintiff provided both a Texas address and a Missouri address on one of the DHR complaints. (Dkt. No. 66-19, at 13) (citing Dkt. No. 66-8). While the *unsigned* "verified complaint" in that document does list a Missouri address for Plaintiff, (Dkt. No. 66-8, at 2), the "complaint form" that was stamped "received" by DHR has a Texas address for Plaintiff, and the record does not reflect who prepared the unsigned complaint. (Dkt. No. 66-8 at 3). The signed "verified amended complaint" that DHR sent to the Defendant contains only Plaintiff's Texas address. (Dkt. No. 66-3, at 8).

### B.       Title VII – Gender Discrimination

Title VII, in relevant part, provides that it is unlawful for an employer "to discharge any individual, or otherwise to discriminate against any individual . . . because of such individual's . . . gender." 42 U.S.C. § 2000e-2(a)(1). "Title VII . . . discrimination claims are governed at the summary judgment stage by the burden-shifting analysis first established in *McDonnell Douglas Corp. v. Green*." [10] *Tolbert v. Smith*, 790 F.3d 427, 434 (2d Cir. 2015).

First, the plaintiff must establish, by a preponderance of the evidence, a prima facie case of discrimination. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993). "The requirements to establish a prima facie case are 'minimal,' and a plaintiff's burden is therefore 'not onerous.'" *Bucalo v. Shelter Island Union Free Sch. Dist.*, 691 F.3d 119, 128 (2d Cir. 2012) (citation omitted) (first quoting *St. Mary's*, 509 U.S. at 506 (1993), then quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)). The establishment of a prima facie case creates a presumption that the employer unlawfully discriminated against the plaintiff. *St. Mary's*, 509 U.S. at 506. The burden then shifts to the defendant, who must articulate a legitimate, nondiscriminatory reason for its actions. *Id*. at 507. If the defendant carries that burden, the presumption of discrimination "drops from the picture," and the burden shifts back to the plaintiff, who must "come forward with evidence that the defendant's proffered, non-discriminatory reason is a mere pretext for actual discrimination." *Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir. 2000); *see also Kwan v. Andalex Grp., LLC*, 737 F.3d 834, 845 (2d Cir. 2013). "The plaintiff must produce . . . sufficient evidence to support a rational finding that the legitimate, non-discriminatory reasons proffered by the [defendant] were false, and that more

---

[10] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

likely than not [discrimination] was the real reason for the [employment action]." *Weinstock*, 224

F.3d at 42 (alterations in original) (internal quotation marks omitted).

### 1.    Prima Facie Case

To establish a prima facie failure-to-hire claim under Title VII, a plaintiff must show that:

"(1) he is a member of a protected class, (2) he was qualified for the job for which he applied, (3)

he was denied the job, and (4) the denial occurred under circumstances that give rise to an

inference of invidious discrimination." *Vivenzio v. City of Syracuse*, 611 F.3d 98, 106 (2d Cir.

2010). The fourth factor of this test may be satisfied "through direct evidence of intent to

discriminate, or by indirectly showing circumstances giving rise to an inference of

discrimination." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87 (2d Cir. 2015)

(citation omitted).

Plaintiff satisfies the first and third prong: as a male, Plaintiff is a member of a protected

class, and Plaintiff was denied the Office Assistant 1 position. Defendant argues that Plaintiff

cannot show a prima facie case of discrimination because he was not qualified for the position

due to the feedback provided by his references, (Dkt. No. 66-19, at 16-17), and cannot establish

that circumstances existed giving rise to an inference of discrimination, (*id.* at 17).

### a.    Plaintiff's Qualifications

"Whether an individual is 'qualified' for a job must be assessed in relation to the criteria

the employer has specific for the position." *Sarmiento v. Queens Coll.*, 386 F. Supp. 2d 93, 97

(E.D.N.Y. 2005) (first citing *Belgrave v. Pena*, No. 98-cv-2517, 2000 WL 1290592, at *11, 2000

U.S. Dist. LEXIS 13141, at *33-34 (S.D.N.Y. Sept. 13, 2000), then citing *Thornley v. Penton

Publ.*, 104 F.3d 26, 29 (2d Cir. 1997)). The Plaintiff "need not show that he can perform the

relevant skill perfectly or even at an average level." *Panjwani v. Jet Way Sec. & Investigations,

LLC*, No. 13-cv-7186, 2016 WL 3675331, at *10, 2016 U.S. Dist. LEXIS 25410, at *29

(E.D.N.Y. Feb. 26, 2016) (citing *Gregory v. Daly*, 243 F.3d 687, 696 (2d Cir. 2001)). "Instead, [the plaintiff] need only make the 'minimal showing' that [he] 'possessed the basic skills necessary for performance of [the] job.'" *Id*. (citing *Gregory*, 243 F.3d at 696).

Defendant argues that Plaintiff cannot establish the second prong of a prima facie case of discrimination because he was not qualified for the position for which he applied. (Dkt. No. 66-19, at 16). In order to meet the "Required Qualifications" for the Office Assistant 1 position, a candidate must "hold or have held the title of Office Assistant 1 (Keyboarding) or be reachable on the full-time NYS Civil Service list and respond to canvass letter that will be sent to people on the eligible list." (Dkt. No. 66-10). Although Defendant notes that Plaintiff never held an Office Assistant 1 position before, (Dkt. No. 66-19, at 16), Plaintiff was reachable on the full-time NYS Civil Service list, and did respond to a canvas letter that he received, (Dkt. No. 66-11), and therefore met the "Required Qualifications" on their face.[11]

The "Summary of Position" notes that the "position involves excellent computer skills, exceptional attention to detail, and extensive contact with students, faculty, staff, and the public." (Dkt. No. 66-10). Plaintiff testified at his deposition that he possessed certain computer skills such as experience with Microsoft Word and Microsoft Excel, and "very good keyboarding skills," but did not have any keyboarding certificates, and had never taken keyboarding lessons or classes. (Dkt. No. 66-6, at 47). Plaintiff had experience working with the police, (*id*. at 41), but has produced no evidence showing that this was a qualification of the Office Assistant 1 position. Plaintiff previously worked in a university setting, (*id*. at 47), and had prior experience

---

[11] The Required Qualifications additionally specify that an eligible candidate "must also pass the Civil Service typing test, which can be administrated in the Office of Human Resources." (Dkt. No. 66-10). Nothing in the record reflects that Plaintiff had been offered the Civil Service typing test prior to being rejected for the position, and Defendant does not argue that this affected his qualifications.

doing the "type of work" required as an office assistant while working for the Internal Revenue Service and while working at a bank, (*id*.).

Defendant argues that Plaintiff's own references show that Plaintiff does not possess the necessary skills, and therefore was not qualified for the position.[12] (Dkt. No. 66-19, at 16). One reference remarked that Plaintiff needed to "work on slowing down and checking for spelling and grammar mistakes as well as punctuation errors when using written communication." (Dkt. No. 66-13, at 3). The same reference also noted that Plaintiff had "a tendency to be negative at times" and needed "to learn more ways to use the computer rather than just surfing the internet." (*Id*.).

Although Plaintiff's reference certainly casts doubt on his qualification for a position that involved "excellent computer skills," "exceptional attention to detail" and "extensive contact with students, faculty, staff, and the public," Plaintiff's testimony satisfies the *de minimis* burden of showing he possessed the basic skills necessary for the Office Assistant 1 position. *See Antunes v. Putnam/Northern Westchester Bd. of Coop. Educ.*, No. 09-cv-3063, 2011 WL 1990872, at *5, 2011 U.S. Dist. LEXIS 54111, at *21-23 (S.D.N.Y. May 19, 2011) (finding the plaintiff demonstrated he was qualified for custodial worker position where he testified to having held numerous jobs that provided him with "with the necessary knowledge, skills, and abilities," and despite not "adduc[ing] specific evidence of each area of knowledge, skill, and ability enumerated in the [] job description, he has nonetheless demonstrated considerable experience in the areas of cleaning, maintenance, and carpentry" to satisfy the *de minimis* burden).

---

[12] Defendant claims Plaintiff was "asked to provide professional references, including a current or former manager" as required by the Skill Survey pilot program, (Dkt. No. 66-7, at 51; Dkt. No. 66-9, ¶ 12; Dkt. No. 66-14, at 1), but Plaintiff testified that the references he was asked to provide could be from "anybody," (Dkt. No. 66-6, at 56).

### b.        Inference of Discrimination

Inference of discrimination is a 'flexible [standard] that can be satisfied differently in differing factual scenarios.'" *Howard v. MTA Metro-N. Commuter R.R.*, 866 F. Supp. 2d 196, 204 (S.D.N.Y. 2011) (quoting *Chertkova v. Conn. Gen. Life Ins. Co.*, 92 F.3d 81, 91 (2d Cir. 1996)). "No one particular type of proof is required to show that [the adverse employment action] occurred under circumstances giving rise to an inference of discrimination." *Ofoedu v. St. Francis Hosp. & Med. Ctr.*, No. 04-cv-1707, 2006 WL 2642415, at *14, 2006 U.S. Dist. LEXIS 68704, at *49 (D. Conn. Sept. 13, 2006).

Although neither party raises the issue in their submissions, the Court first addresses whether Plaintiff's claim that the position was filled by a woman is sufficient, alone, to create an inference of discriminatory intent. (Dkt. No. 66-6, at 36). "In the failure to hire context, '[a]n employer's choice of a less qualified employee not from [p]laintiff's protected class raises an inference of discrimination sufficient to establish a prima facie case of discrimination.'" *Szewczyk v. City of New York*, No. 15-cv-918, 2016 WL 3920216, at *6, 2016 U.S. Dist. LEXIS 91856, at *17 (E.D.N.Y. July 14, 2016) (quoting *Butts v. N.Y. City Dep't of Hous. Preservation & Dev.*, No. 00-cv-6307, 2007 WL 259937, at *9, 2007 U.S. Dist. LEXIS 6534, at *32 (S.D.N.Y. Jan. 29, 2007), *aff'd sub nom* 307 F. App'x 596 (2d Cir. 2009)).

The position for which Plaintiff applied was not permanently filled, and instead a "temporary clerical support person, Anne" was placed in the position until it could be filled permanently. (Dkt. No. 66-9, ¶ 24). Almost a year after Plaintiff was rejected for the position, Defendant hired a woman to fill the position permanently. (Dkt. No. 66-9, ¶ 25). Plaintiff has produced no evidence showing that either Anne or the woman hired almost a year later were less qualified than Plaintiff. Plaintiff claimed that he "was the person [Defendant was] looking for" because the position required "work[ing] with the local police dept[artment]," (Dkt. No. 66-7, at

42), and he had experience working with the "Cortland police," (Dkt. No. 66-6, at 41). However, the record does not show that this experience made him more qualified than any other candidate, as nothing reflects that experience with the police was a qualification of the position. (*See* Dkt. No. 66-10) (Vacancy Announcement requiring "contact with students, faculty, staff, and the public). On this record, the fact that the position was filled temporarily, and later permanently, by women does not give rise to an inference of discrimination sufficient to establish a prima facie case of discrimination.

Discriminatory remarks may also evince discrimination. *Sethi v. Narod*, 12 F. Supp. 3d 505, 538 (E.D.N.Y. 2014). Plaintiff cites to the "bias remark" by Evans that there was "a person in that job and that when the civil service list came out, they were going to hire [] her because they wanted a woman in that position." (Dkt. No. 66-6, at 66-67; Dkt. No. 71, at 2-5). Defendant cites to the significant record evidence that no such comment was made, and to the improbability that Evans would have made such a comment in a telephone call with the DHR specialist. (Dkt. No. 66-19, at 18). However, given the parties' factual dispute about whether Evans made this remark, and in light of its obligation to construe the facts in the light most favorable to the non-moving party, the Court must assume the remark was made. *Sethi*, 12 F. Supp. 3d at 538; *see Crump v. NBTY, Inc.*, 847 F. Supp. 388, 395 (E.D.N.Y. 2012). Defendant argues that even if the remark was made it is not probative of discrimination. (Dkt. No. 66-19, at 18-21).

In considering whether a remark is probative, district courts in this circuit have considered four factors: "(1) who made the remark (i.e., a decision-maker, a supervisor, or a low-level co-worker); (2) when the remark was made in relation to the employment decision at issue; (3) the content of the remark (i.e., whether a reasonable juror could view the remark as discriminatory); and (4) the context in which the remark was made (i.e., whether it was related to

the decision-making process)." *Henry v. Wyeth Pharms., Inc.*, 616 F.3d 134, 149 (2d Cir. 2010); *see Tomassi*, 478 F.3d at 115.

As to the first factor, Defendant argues that because the remark was allegedly made by Evans, and not Pitaro, who had hiring authority over the position, the remark should not be given great weight. (Dkt. No. 66-19). Evans, however, did have some involvement in the decision-making process. *See Kirsch v. Fleet St., LTD.*, 148 F.3d 149, 162-63 (2d Cir. 1998) (rejecting defendants' argument that comments made by one of the company's decisionmakers were only "stray remarks"). After Evans reviewed the poor results from Plaintiff's Skill Survey, Evans "inform[ed] Mr. Pitaro that human resources did not support pursuing Mr. Troise further for a position at the university." (Dkt. No. 66-9, ¶ 21). Yet ultimately, it was Pitaro who "did not offer Mr. Troise the position," (Dkt. No. 66-9, ¶ 22), and the fact that Evans was not the ultimate decision-maker weighs against the probative value of the comment. *See, e.g, Terpstra v. Shoprite Supermarket, Inc.*, No. 17-cv-6840, 2019 WL 3338267, at *10, 2019 U.S. Dist. LEXIS 124355, at *38 (S.D.N.Y. July 25, 2019) ("However, Berger was not the ultimate decisionmaker who terminated Plaintiff's employment. 'Courts of this district have held that [a] plaintiff's failure to provide evidence of bias on the part of the person(s) responsible for an adverse employment action is grounds for dismissal of a Title VII claim.'" (citing *Randolph v. CIBC World Markets*, No. 01-cv-11589, 2005 WL 704804, at *13, 2005 U.S. Dist. LEXIS 4839, at *35 (S.D.N.Y. Mar. 29, 2005))).

As to the second factor, "[t]here is no bright line rule regarding the length of time that renders an allegedly discriminatory remark too attenuated to constitute evidence of discrimination." *Sethi*, 12 F. Supp. 3d at 540. Defendants argue that here, where the remark was made six months after the alleged adverse action, the timing weighs against granting the remark

any weight. (Dkt. No. 66-19, at 12). This, however, ignores the content of the alleged remark, which stated that they wanted to hire the woman currently in the position because they "wanted a woman in that position." (Dkt. No. 66-6, at 66-67). The fact that Evans stated this almost six months after Pitaro decided not to offer Plaintiff the position does not significantly blunt its probative value. *Cf. Smith v. New York & Presbyterian Hosp.*, 440 F. Supp. 3d 303, 338 (S.D.N.Y. 2020) (finding that alleged discriminatory remark was "of little probative value because it was made after the decision to reassign [Plaintiff]" where there was nothing tying the "statement to an employment decision or suggest[ing] that [the supervisor] was explaining his motivations for any such decision").

Turning to the third and fourth factors, the alleged remark clearly related to the hiring process. And the alleged comment that "they were going to hire" the woman currently in the job because "they wanted a woman in that position" is clearly probative of discrimination. (Dkt. No. 66-6, at 66-67). The Court finds that Plaintiff has satisfied his minimal burden of establishing a prima facie discrimination case.

## 2. Legitimate Nondiscriminatory Reason

Once Plaintiff has shown a prima facie case of discrimination, the burden falls on Defendant to show a "legitimate, nondiscriminatory reason" for not hiring Plaintiff. *McDonnell Douglas Corp.*, 411 U.S. at 802. Defendant's burden "is not a particularly steep hurdle." *Hyeck v. Field Support Servs., Inc.*, 702 F. Supp. 2d 84, 93 (E.D.N.Y. 2010). It "is one of production, not persuasion; it 'can involve no credibility assessment.'" *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 142 (2000) (quoting *St. Mary's*, 509 U.S. at 509). Defendant has satisfied its burden here with evidence that the decision not to hire Plaintiff was based on his references and his Skill Survey ratings. Specifically, Evans stated that Plaintiff was not hired "simply because his references were abysmal." (Dkt. No. 66-9, ¶ 23).

Defendant has produced ample evidence in the record to support this contention. One of Plaintiff's references said that he needed to "work on slowing down and checking for spelling and grammar mistakes as well as punctuation errors when using written communication," that he had "a tendency to be negative at times," and needed "to learn more ways to use the computer rather than just surfing the internet." (Dkt. No. 66-13, at 3). Plaintiff's Skill Survey results placed him in the 1st percentile amongst his relevant norm group, and he was given a 1st percentile overall average numeric rating on the Competency Cluster. (*Id.*). SUNY Cortland prefers candidates with Skill Survey reference check results of "at least a percentile above 10% because an applicant who scores below 10% is much more likely to be terminated within a year." (Dkt. No. 66-9, ¶ 20). Defendant's preference for applicants with a certain level of references, which Plaintiff did not meet, is clearly a legitimate, nondiscriminatory reason for not hiring Plaintiff.

### 3.    Pretext

A plaintiff's burden at the third stage of the *McDonnell Douglas* burden-shifting analysis is to produce "sufficient evidence to support a rational finding that the legitimate, non-discriminatory reasons proffered by the [defendant] were false, and that more likely than not [discrimination] was the real reason for the [employment action]." *Weinstock*, 224 F.3d at 42 (quoting *Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 714 (2d Cir. 1996)). In other words, the Court must "now ask whether, without the aid of the presumption" of discrimination raised by the prima face case, the plaintiff "has raised sufficient evidence upon which a reasonable jury could conclude by a preponderance of the evidence that the decision to fire him was based, at least in part," on his gender. *Holcomb v. Iona Coll.*, 521 F.3d 130, 141 (2d Cir. 2008). "[A] plaintiff may rely on evidence comprising [his] prima facie case . . . together with other evidence such as inconsistent employer explanations, to defeat summary judgment at that stage." *Kwan*, 737 F.3d at 847. Pretext may be shown, inter alia, "by demonstrating weaknesses,

implausibilities, inconsistencies, or contradictions in the employer's proffered legitimate"

nondiscriminatory reasons for its action. *Id*. at 846. If "the plaintiff has failed to show that there

is evidence that would permit a rational factfinder to infer that the employer's proffered rationale

is pretext, summary judgment dismissing the claim is appropriate." *Patterson v. Cty. of Oneida*,

375 F.3d 206, 221 (2d Cir. 2004).

Plaintiff has not produced any evidence that would permit a fact finder to infer that

Defendant's legitimate business reasons for not hiring Plaintiff were pretextual. There is no

evidence contradicting the extremely poor reference check. Nor has Plaintiff adduced any

evidence of gender bias on the part of Pitaro. Pitaro decided to pursue Plaintiff, and not the

female candidate that was interviewed, after telephone interviews of both candidates. (Dkt. No.

66-9, at ¶ 10). Pitaro did not offer Plaintiff the position after Evans obtained the "abysmal"

reference check and informed Pitaro that human resources "did not support" Plaintiff's

application. (*Id.* at ¶ 21). Defendant had hired a male candidate for an equivalent Office Assistant

1 position in its Registrars Office approximately one month earlier. (*Id*. at ¶ 26).

Plaintiff has not offered, and a thorough review of the record does not yield, any evidence

to show that his poor references were not what kept him from being hired. *See Oliveras v.*

*Wilkins*, No. 06-cv-3578, 2012 WL 3245494, at *13, 2012 U.S. Dist. LEXIS 110908, at *45

(S.D.N.Y. June 26, 2012) (finding that where Plaintiff "offer[ed] nothing beyond speculation and

conclusory allegations" "to demonstrate that impermissible animus motivated [his] termination,"

he had "provide[d] no evidence based on which a rational jury could determine that the

[employer's] proffered reason for its decision was a mere pretext for gender discrimination").

Although a plaintiff is not required to show that the employer's proffered reasons played

no role in the employment decision, he still "must produce sufficient evidence of discrimination

to permit a rational trier of fact to conclude that the prohibited factor was at least one of the motivating factors" in order to avoid summary judgment. *Sulehria v. City of New York*, 670 F. Supp. 2d 288, 306 (S.D.N.Y. 2009) (citing *Holcomb*, 521 F.3d at 138). Here, construing all of the evidence in the light most favorable to Plaintiff, including the alleged "bias remark" by Evans, Plaintiff has failed to raise a triable issue of fact that Pitaro's decision not to hire him was motivated by gender discrimination. *See Farias v. Instructional Sys., Inc.*, 259 F.3d 91, 99 (2d Cir. 2001) ("Plaintiffs failed to produce any evidence, other than conclusory statements unsupported by the record, to rebut the legitimate, nondiscriminatory reasons offered by [defendant], let alone evidence that could reasonably support a verdict in their favor."). Defendant is therefore entitled to summary judgment dismissing Plaintiff's gender discrimination claim.

## VI.     CONCLUSION

For these reasons, it is hereby

**ORDERED** that Defendant's motion for summary judgment (Dkt. No. 66) is **GRANTED** in its entirety; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED with prejudice**; it is further

**ORDERED** that the Clerk is directed to close this case and to serve the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: January 8, 2021
       Syracuse, New York

Brenda K. Sannes
U.S. District Judge